# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHWESTERN DIVISION

UNITED STATES OF AMERICA,     )
    )
      Plaintiff,     )
    )
    v.     )     Case No. 16-05038-07-CR-S-RK
    )
KELLY C. WALKER,     )
    )
      Defendant.     )

## REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE

Pursuant to 28 U.S.C § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. Defendant moves to dismiss or, in the alternative, for severance for improper joinder. (*See* Doc. 112.) Defendant also moves to suppress statements he made to law enforcement on June 28, 2016. (*See* Doc. 110.) On June 8, 2017, the undersigned held a hearing on the Motion to Suppress. (*See* Doc. 159.) Defendant was present with his attorney, John F. Appelquist. Abram McGull II represented the United States. During the hearing, the Court heard testimony from Det. Joseph Houdyshell, an investigator with the Ozark Drug Enforcement Task Force, and Special Agent Peery. After careful review of the evidence and for the reasons set forth below, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress, (Doc. 110), be **DENIED** and Defendant's Motion for Severance, (Doc. 112) be **DENIED as moot**.

**Finding of Fact[1]**

On June 2016, Detective Houdyshell and members of the Ozark Drug Enforcement Task Force ("ODETF") began conducting an investigation after receiving information regarding the

---

[1] The facts set forth herein are taken from the testimony adduced and the exhibits admitted at the hearing on this Motion. The hearing transcript appears as Doc. 159. The Government's exhibit index appears as Doc. 155, and Defendant's exhibit index appears as Doc. 156.

sale of methamphetamine by Defendant Kelly Walker. On June 21, 2016, after conducting two controlled buys from Defendant, Detective Houdyshell obtained two search warrants, one for Defendant's place of employment in Newton County and the other for his residence in Jasper County. (Doc. 159.) On June 28, 2016, Detective Houdyshell, along with members of the ODETF, served a search warrant on Defendant's workplace, Barney's Quick Lube on East 32nd Street in Newton County. (*Id.*) Upon locating Defendant, officers escorted him to his vehicle where Detective Abbot advised him of his *Miranda* warnings. (*Id.*) Defendant stated that he understood his *Miranda* rights. (*Id.*) Defendant then stated that he would rather talk to the officers down at the station than at his place of employment. (*Id.*) DEA Agent Doug Johnson, Detective Matt Walker, and Detective Houdyshell were all present when Defendant was read his *Miranda* rights by another officer. (*Id.*) At no point during this initial encounter did the Defendant indicate that he wished to remain silent. (*Id.*) Rather, he indicated a desire to speak with the officers at a different location. (*Id.*)

Upon arrival at the police station, Agent Sean Henry, Agent Doug Johnson, and Detective Houdyshell placed Defendant in a breakroom area.[2] (Doc. 159.) Inside the breakroom, Detective Houdyshell again read Defendant's *Miranda* rights. (*Id.*) Detective Houdyshell asked Defendant if he understood each of those rights previously explained to him. (*Id.*) Defendant responded by saying "yes." (*Id.*) Detective Houdyshell also testified that the officers involved did not make any threats or make any promises to Defendant during the interview. (Doc. 159.) He further stated that no weapons were drawn, and that the officers did not raise their voices at Defendant. (*Id.*) Detective Houdyshell testified that the Joplin Police Department and the

---

[2] Prior to transporting Defendant to the police department, Detective Houdyshell, along with members of the ODETF, served the Jasper County search warrant at Defendant's residence. (*See* Doc. 159.)

ODETF reports showed Defendant had 116 prior contacts with law enforcement ranging from a vehicle stop to an arrest. (*Id.*)

During the interview, Defendant was asked whether he was involved in the purchase and sale of methamphetamine with two other individuals who have since been indicted as co-conspirators. (*Id.*) Defendant responded in the affirmative. (*Id.*)

**I.    Conclusions of Law**

Defendant contends that there is no evidence that he waived his *Miranda* rights. Specifically, Defendant argues that because the administration of *Miranda* warnings and waiver were not memorialized in writing, he did not intelligently and voluntarily waive his *Miranda* rights prior to his interrogation. Further, he contends he invoked his rights after being *Mirandized* at his workplace. Defendant therefore moves the Court to suppress his statements to law enforcement on June 28, 2016. The Government responds that *Miranda* warnings and waivers are not required to be given in writing and that Defendant validly waived his rights. Thus, the Government contends that there is no Fifth Amendment violation and Defendant's Motion to Suppress should be denied. The Court takes up the parties' arguments below.

An assertion of the right to remain silent must be expressed unequivocally and unambiguously. *See Simmons v. Bowerbox*, 235 F.3d 1124, 1131 (8th Cir. 2001). A defendant's statements during a custodial interrogation are inadmissible absent an express or implied waiver. *See Berghuis v. Thompkins*, 560 U.S. 370, 387-88 (2010). The courts determine whether an express or implied waiver has been established by examining the whole course of questioning. *Id*. Once the defendant has been advised of his *Miranda* rights, law enforcement officials can continue their interrogation without a formal waiver; however, once a defendant invokes his rights, all questioning must cease. *Id*. A defendant can validly waive his rights orally or in

writing. *See United States v. Zamarripa*, 544 F.2d 978, 981 (8th Cir. 1976); *Martin v. United States*, 691 F.2d 1235, 1239 (8th Cir. 1982). "Failure to utilize a written waiver form and tape-recording equipment" does not mean statements made during an interrogation must be suppressed. *See United States v. Williams*, 429 F.3d 767, 772 (8th Cir. 2005).

The government bears the burden of proving by a preponderance of the evidence that a defendant's waiver of his *Miranda* rights was voluntary, knowing and intelligent. *See United States v. Caldwell*, 954 F.2d 496, 508 (8th Cir. 1992); *United States v. Sepulveda-Sandoval*, 729 F. Supp. 2d 1078, 1102 (D.S.D. 2010) (citing *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)). That is, the Government must show the defendant's waiver of the right against self-incrimination was "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *See United States v. Jones*, 23 F.3d 1307, 1313 (8th Cir. 1994). Moreover, a waiver of those rights must be made with "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

In this case, Defendant waived his Fifth Amendment right to remain silent and to have counsel present. The evidence shows that Defendant was advised of his *Miranda* rights twice: first, when he was arrested and for a second time prior to his interview with officers at the police station in Joplin. Both times Defendant acknowledged that he understood those rights. During the initial encounter, Defendant did not indicate that he wished to remain silent. Rather, he indicated a desire to speak with the officers at a different location. *See Simmons*, 235 F.3d at 1131 (8th Cir. 200) ("[T]o invoke one's right to remain silent, one must unequivocally express his desire to remain silent.") Defendant also had the opportunity to invoke his rights before answering questions or speaking with the officers. Instead, Defendant proceeded to make statements to Detective Houdyshell at the police station. *See Berghuis*, 560 U.S. at 387 (noting

4

the actions and words of a defendant interrogated can establish an implied waiver of *Miranda* rights). The facts in this case demonstrate that Defendant did not invoke his right to remain silent when arrested at his workplace or at the police station in Joplin.

"Due Process requires that incriminating statements or confessions be voluntary." *See United States v. Reynolds*, 743 F. Supp. 2d 1087, 1091 (D.S.D. 2010). To determine the validity of a *Miranda* waiver, courts analyze the totality of the circumstances surrounding the interrogation. *See United States v. Dunning*, 666 F.3d 1158, 1165 (8th Cir. 2012). During the interrogation, the officers did not make any threats or promises to Defendant; nor did the officers draw their weapons or raise their voices. These facts show that Defendant did not make statements because of any deception, intimidation, or coercion by law enforcement officers. *See United States v. Elburki*, No. CRIM.A. 13-00003-01, 2013 WL 3832461, at *5 (W.D. Mo. July 23, 2013) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)) (noting that a valid waiver of *Miranda* rights can be established "only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension").

Additionally, courts consider factors such as detention length, the repetitive and prolonged nature of questions, the suspect's age, intelligence and education, familiarity with the criminal justice system, and physical and mental condition. *See Reynolds*, 743 F. Supp. 2d at 1091. In this case, reports from the Joplin Police Department and the ODETF show Defendant had 116 prior contacts with law enforcement prior to his arrest on June 28. Such contacts demonstrate that he was familiar with police proceedings and would be familiar with the right to remain silent and have counsel present. *See United States v. Ortega-Montalvo*, 850 F.3d 429, 435 (8th Cir. 2017) (finding a defendant's criminal history indicative of being aware of rights and protections, because the defendant "was experienced in the legal system and likely aware of

his rights") (quoting *United States v. Dunning*, 666 F.3d 1158, 1165 (8th Cir. 2012). Despite this background and experience, Defendant chose to speak to Detective Houdyshell after being advised of his rights. *See Jones*, 29 F.3d at 1313 ("The 'totality of the circumstances' in each case may include the 'background, experience, and conduct of the suspect.'"). Given these circumstances, the Court concludes that Defendant knowingly, voluntarily, and intelligently waived his *Miranda* rights. *See id*. ("Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may courts properly conclude that the *Miranda* rights have been waived."). As such denial of Defendant's Motion to Suppress is appropriate.

## II.     Improper Joinder

On November 2, 2016, Defendant was charged in the Indictment, (*See* Doc. 1.), as follows: Count 1, conspiracy to distribute more than 500 grams of methamphetamine; Counts 5 and 6, distribution of methamphetamine; Count 7, possession of methamphetamine with intent to distribute. (*Id*.) The Indictment also included Count 2, a distinct conspiracy to distribute methamphetamine, in which Defendant was not named. (*Id*.) Defendant argues that no logical relationship exists among the offenses and parties joined between Count 1 and Count 2 of the Indictment. (*See* Doc. 112.) Further, Defendant contends that the Government appears to have improperly joined Count 1 and Count 2 on the Indictment. (*Id*.) The Court believes the Motion is well taken, however, in light of the Government's Motion to Dismiss Count 2 of the Indictment, (*See* Doc. 1), the issue is now moot. (*See* Doc. 157, 158.) The charges set forth against the individuals named in Count 2 of the Indictment, (*See* Doc. 1), have been incorporated into a separate Indictment returned on May 11, 2017. (*See* Doc. 157.)

### III.     Recommendation

Therefore, for the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's

Motion to Suppress, (Doc. 110), be **DENIED** and Defendant's Motion for Severance, (Doc.

112), be **DENIED as moot**.

**IT IS SO ORDERED**

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: August 15, 2015